(No. 5565-

MARY WEISHAAR, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 9, 1971.*

KRUSEMARK AND BERTANI, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; BRUCE J. FINNE, Assistant Attorney General, for Respondent.

BURKS, J.

Miss Mary Rose Weishaar, the claimant, was 66 years of age when she was injured in an accident on April 6, 1968, on the Jackson Street drawbridge in Joliet. This drawbridge, owned and operated by the respondent, is lifted when necessary to allow passage of river traffic beneath it. The bridge opens in the center when the east and west portions are raised up at a sharp angle. A bridge tender, employed by the respondent, operates the bridge.

Miss Weishaar was walking in an easterly direction from her home to downtown Joliet and was proceeding across the drawbridge in the pedestrian walkway when the accident occurred. She had almost crossed the bridge and was within a few feet of the eastern end when the bridge began to open. As the walk that she was on began to raise, the claimant grabbed on to the guard rail but fell across and

onto the stationary portion of the concrete walkway. She sustained some bodily injuries described later in this opinion.

The complaint charges that claimant's injuries were caused by negligence on the part of respondent's employee, the bridge tender, in that he failed to keep a proper lookout for pedestrians crossing said bridge on the pedestrian crosswalk; failed to give timely warning to the claimant that the bridge was to be opened; and that he opened the bridge when he knew or should have known that a pedestrian was on the walk of the bridge.

The undisputed facts show that claimant certainly had no advance warning that the bridge was going to be raised when she walked on to it. The gate was not down; no bells were ringing; no lights were flashing. It is our opinion that the open gate and the absence of any audible or visual warning signals could properly be regarded by the claimant as an invitation for her to proceed. *Simoneaux* vs. *State Dept. of Highways (La)* 90 ALR2d 100.

The bridge tender, in his testimony as to the procedure for opening the bridge, stated that he first puts on a signal that blows a whistle; then pushes a button for bells and lights which go on a few seconds before the first gate goes down; that when the west gate closes behind the eastbound traffic on the bridge, there is a waiting period of several seconds before the east gate will close; that this intervening period, timed automatically, is apparently calculated to be adequate for traffic on the bridge to clear off at normal traveling speed. That the bridge will not open until all this has been done; and that, even when the gates are down and the signals are on, the bridge tender does not raise the bridge until he has looked to see if any pedestrians may be on the bridge.

The bridge tender's visual observation to determine whether pedestrians may be on the bridge is, in our

judgment, required and implicit in his duty to exercise reasonable care and to take reasonable precautions for the safety of travelers over the structure. *39 Am.-Jur.2d,Highways, Streets and Bridges, Sec. 553.* Such visual observation is especially necessary for the protection of older people, like the claimant, who may not walk or be able to walk as fast as the average' person.

In this case, the bridge tender said that he looked but did not see the claimant when he raised the bridge. Respondent apparently attempted to excuse its employee's failure to see the claimant by putting in photographic evidence showing that there were certain places on the bridge where a pedestrian could not be seen from the bridge tender's house. At such points the bridge tender's vision was obscured by the super-structure of the bridge. This fact, it seems to us, acknowledges that a hazardous situation exists which should have been known to the bridge tender and which increases the degree of care he was required to exercise for the protection of a pedestrian.

The claimant was entirely free from fault and is entitled to recover a reasonable amount in damages for her injuries.

Immediately after her fall, claimant was taken by ambulance to St. Joseph's Hospital where she remained for two weeks. Her injuries consisted of contusions about her body, but x-rays revealed no broken bones. She suffered a back strain and a rather severe contusion on her left leg. She also broke a cyst formation on her left breast which is medically referred to as a carcinoma. The cyst on claimant's chest, of course, was not due to the accident on the bridge but was aggravated by its causing the cyst to bleed. Cobalt treatments were prescribed by her physician. Her hospital and medical bills totalling $782.70 were paid by her insurance companies.

The claimant was semi-retired but sold greeting cards

from door to door earning approximately $25 per month. She was prevented from conducting her occupation for approximately 11 months due to her injuries resulting in a loss of income amounting to approximately $275.

Claimant asked, in her complaint, for damages in the amount of $5,000.00. Based on a careful evaluation of claimant's relatively minor injuries due to this accident and weighing all other factors involved, we feel that an award for damages in the amount of $3,000.00 would be fair and reasonable and justified. Our order will be based on our finding that claimant has proved her case for damages in the amount of $3,000.00.

The claimant was, at the time of the accident, a recipient of public assistance from the Illinois Department of Public Aid. Said Department, as required by law, filed with this Court on June 11, 1970, a petition requesting this Court to enforce the Department's charge against any award that may be entered for the claimant in this cause of action. The amount of the Department's charge against the award is the amount of medical assistance the Department has provided to the claimant from the time of her injury to the date her award is entered, pursuant to the provisions of Ch. 23, Sec. 11-22, Ill.Rev.Stat., 1969. This section excludes from its applicability only three classes of claims or causes of action, namely, those arising under (a) the "Workmen's Compensation Act", (b) the "Workmen's Occupational Diseases Act" and (c) the "Wrongful Death Act". Hence we conclude that the said law applies to actions brought in the Court of Claims and that we must recognize the charge of the Illinois Department of Public Aid as stated in its intervening petition.

The total amount of the charge which the Department of Public Aid claims against the award in this case is $89.30. This is the amount paid to or on behalf of the claimant for medical assistance only. The Department claims no charge

for the total amount of aid provided to the claimant to meet her basic maintenance requirements since the claimant was not considered to be employable at the time of her injury. Since the Department of Public Aid is an agency of the respondent, we do not believe it is necessary for the Court to request the legislature to appropriate $89.30 out of one of the respondent's pockets, the general revenue fund, and put it in another, the Department of Public Aid. The same ultimate result can be accomplished by considering the Department's charge of $89.30 as a set-off against the total award of $3,000.00, making the claimant's net award $2,910.70.

The penultimate paragraph of the aforesaid Section 11-22 of the Public Aid Code states: "This Section shall not affect the priority of an attorney's lien under 'an act concerning attorney's lien' and for the enforcement of same" (Ch. 13, Sec. 14, Ill.Rev.Stat., 1969). Hence we must also recognize the attorney's lien duly filed with this Court by the law firm of Krusemark and Bertani of Joliet, attorneys for the claimant. Said attorneys represented the claimant in this action on a contingent fee basis and have a lien against the award for services rendered to and on behalf of the claimant and for costs incurred. Since the statute provides that the attorney's lien has priority over the charge claimed by the Illinois Department of Public Aid, the attorney's fee would properly be based on the total award of $3,000.00 rather than the net amount as reduced by the Department's charge.

Subsequent to reaching its decision in this matter and just prior to filing this opinion, the Court was duly advised by attorneys for the claimant, that the claimant, Mary Weishaar, died on April 12, 1971; and that her estate will be handled by the public administrator, Mr. William Kaplan, 5 East Van Buren Street, Joliet, Illinois.

Under these circumstances the award in this case must

241

be made to the claimant's estate, and claimant's attorneys will have a claim against said estate for the amount of their lien. The charge of the Department of Public Aid having been recognized by a set-off against the total award, an award to claimant's estate is hereby made as follows:

To the estate of Mary Weishaar, deceased, the sum of $2,910.70.